**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

GURBHEJ SINGH,

        Petitioner,

    v.

WARDEN OF THE DESERT
VIEW DETENTION FACILITY,
ADELANTO, CALIFORNIA, *et
al*.,

        Respondents.

Case No. 5:26-cv-00897-DMK

**MEMORANDUM AND ORDER
GRANTING PETITION AND
ORDERING IMMEDIATE RELEASE**

On February 24, 2026, Petitioner Gurbhej Singh, an immigration detainee, filed a Petition for Writ of Habeas Corpus by a Person in Federal Custody Under 28 U.S.C. § 2241, challenging his detention at the Adelanto ICE Processing Center. ECF 1.

**I**

Petitioner, a native and citizen of India, entered the United States without inspection on May 13, 2023.  *Id.* at ¶ 2.  He was detained shortly thereafter, taken into custody, and then released on his own recognizance on May 15, 2023.  *Id.* at ¶¶ 2-3.  Following his release, Petitioner filed for asylum, withholding of removal,

and protection under the Convention Against Torture. *Id.* at ¶ 4.  He maintained lawful employment, paid taxes, and appeared at each one of his immigration court hearings. *Id.*  He has never been arrested, charged, or convicted of any crime. *Id.*

On December 10, 2025, Petitioner was stopped by police during the course of routine traffic enforcement activity. *Id.* at ¶ 5.  He had not violated any traffic laws or committed any crime. *Id.*  Nevertheless, he was re-detained by DHS that same day; he was not given either notice or a pre-detention hearing. *Id.*

On December 11, 2025, Petitioner's applications for asylum, withholding of removal, and protection under the Convention Against Torture were denied. *Id.* at ¶ 6.  Petitioner timely appealed, and his appeal remains pending before the Board of Immigration Appeals. *Id.*

On February 4, 2026, Petitioner requested a bond hearing under 8 U.S.C. § 1226, but the immigration judge denied bond for lack of jurisdiction.

Petitioner then filed the instant Petition on February 24, 2026, alleging, inter alia, that his detention without notice or a pre-deprivation hearing violates his procedural and substantive rights to due process under the Fifth Amendment, as well as the Immigration and Nationality Act ("INA"). *See generally* ECF 1.  Based on these violations, Petitioner seeks immediate release from custody or, alternatively, an individualized custody determination.  ECF 1 at 33-34.[1]

**II**

On the same date that he filed the Petition, Petitioner also filed a motion for temporary restraining order.  ECF 2.  The District Judge granted the motion in part, finding that Petitioner was entitled to a bond hearing as a member of the *Maldonado Bautista* class.  ECF 9 at 1.  The District Judge, however, declined to find that Petitioner had demonstrated a likelihood of success on his procedural due process claim, given that it was unclear what, if any, post-detention process Petitioner had

---

[1] The Court uses the page numbers inserted into the pleadings by the Court's electronic filing system.

2

already received.  *Id.* at 6-7.

On March 7, 2026, Petitioner received a bond hearing pursuant to the District Judge's order.  ECF 11 at 2.  The Immigration Judge denied bond, finding that "the denial of [Petitioner's] applications [for asylum and protection under the Convention Against Torture], coupled with [his] recent illegal entry, and the lack of available permanent relief, substantially outweigh[ed] the guarantee of [his] aunt and uncle, and availability of their fixed address."[2]  ECF 11-1 at 1.

Petitioner contends that this bond hearing was not sufficient to cure the procedural due process violation that he suffered when he was detained without notice or a pre-deprivation hearing.  ECF 11 at 3.  In opposition, Respondents only state that this Court lacks jurisdiction to sit as an appellate body to evaluate the merits of the bond hearing and its outcome.  *Id.* at 4.

On March 11, 2026, Petitioner filed an Amended Petition, clarifying that the hearing Petitioner received on December 11, 2025, was directed solely to the merits of Petitioner's applications for asylum, withholding of removal, and protection under the Convention Against Torture.  ECF 12 at 2.  Thus, aside from Petitioner's February 4, 2026, request for a bond hearing, which was subsequently denied for lack of jurisdiction, and the March 7, 2026, bond hearing that was ordered by the Court, Petitioner had not received any other post-detention process.

This Court held a hearing on this matter on July 16, 2026.  Having heard oral argument from both parties and having considered the briefs filed to date, the Court finds that this matter is now ready for decision.

### III

As an initial matter, Respondents contend that this Court need not reach the merits of the instant Petition because (1) it lacks jurisdiction under 8 U.S.C.

---

[2] Based on the representations of counsel at the Court's July 16, 2026, hearing on this matter, there is no transcript or audio recording of this bond hearing available for review.

§§ 1252(g) and (b)(9); and (2) the instant Petition is moot because Petitioner received a bond hearing on March 7, 2026, pursuant to the District Judge's order granting in part Petitioner's motion for temporary restraining order.  *See generally* ECF 16.

The Court will address each of these bases in turn.

## A

First, the Court disagrees that 8 U.S.C. §§ 1252(g) and (b)(9) divest it of jurisdiction to consider Petitioner's claims.

Section 1252(g) is a narrow provision that applies only to three discrete actions that the Attorney General may take, namely his "decision or action" to "commence proceedings, adjudicate cases, or execute removal orders."  8 U.S.C. § 1252(g).  In interpreting Section 1252(g), both the Supreme Court and Ninth Circuit have made clear that "[i]nstead of 'sweep[ing] in any claim that can technically be said to "arise from" the three listed actions,' the provision 'refer[s] to just those three specific actions themselves.'"  *Ibarra-Perez v. United States*, 154 F.4th 989, 996 (9th Cir. 2025) (*quoting Jennings v. Rodriguez*, 583 U.S. 281, 294, 138 S. Ct. 830, 200 L. Ed. 2d 122 (2018) (plurality opinion)).

Likewise, Section 1252(b)(9) limits this Court's jurisdiction insofar as it mandates that "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States . . . shall be available only in judicial review of a final order."  But the Supreme Court has made clear that this Section "'does not present a jurisdictional bar' where those bringing suit 'are not asking for review of an order of removal,' 'the decision ... to seek removal,' or 'the process by which . . . removability will be determined.'"  *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1, 19, 140 S. Ct. 1891, 207 L. Ed. 2d 353 (2020) (*quoting Jennings v. Rodriguez*, 583 U.S. 281, 294, 138 S. Ct. 830, 200 L. Ed. 2d 122 (2018)).

Here, it is clear from the allegations in the Petition that Petitioner is not asking for review of an order of removal, the decision to seek removal, or the process by which removability will be determined. Nor is he challenging any decisions or actions by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders. He is only challenging his continued detention, insofar as it violates his right to due process. As such, nothing in the instant Petition presents a bar to this Court's jurisdiction.

**B**

Second, the Petition is not moot.

The "basic question in determining mootness is whether there is a present controversy as to which effective relief can be granted." *Nw. Envtl. Def. Ctr. v. Gordo*n, 849 F.2d 1241, 1244 (9th Cir. 1988). Thus, "[a] case becomes moot when interim relief or events have deprived the court of the ability to redress the party's injuries." *United States v. Alder Creek Water Co*., 823 F.2d 343, 345 (9th Cir. 1987). Courts in this district have concluded that a habeas petition is not moot where the legal sufficiency of a post-deprivation bond hearing remains at issue. *See, e.g., F.R.V. v. Semaia*, No. 5:26-vc-1069-DSR, 2026 WL 852064 (C.D. Cal. July 22, 2026) (finding petition not moot where *Rodriguez* hearing was not sufficient to cure pre-deprivation violation of procedural due process rights); *Zakharenkova v. Mullin*, No. EDCV 26-2353-AS, 2026 WL 1454524 at *2 (C.D. Cal. May 19, 2026) (finding petition not moot where respondents failed to demonstrate that bond hearing was legally sufficient).

Here, the question remains whether the bond hearing Petitioner received on March 7, 2026, was sufficient to cure any due process violation that might have occurred prior to or during his current detention. Because this Court can redress Petitioner's injuries by ordering his release if it finds that the hearing was not sufficient, the Petition is not moot.

5

### III

Turning to the merits of the Petition, the Court first considers Petitioner's claim that his constitutional right to procedural due process was violated when he did not receive notice or a pre-deprivation hearing upon his arrest and detention.

There is no question that due process rights extend to noncitizens present in the United States. *See Zadvydas v. Davis*, 533 U.S. 678, 693-94 (2001) ("[T]he Due Process Clause applies to all persons within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." (citation modified)). When determining what procedures are required by due process, the Court applies the three-factor test under *Mathews v. Eldridge*, 424 U.S. 319 (1976), which weighs: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

Here, the District Judge previously found that Petitioner has a protected liberty interest in remaining out of custody (ECF 9 at 5), and the government's interest in detaining individuals like Petitioner without a hearing is "low" (*id.* at 7). The District Judge could not conclude at the time, however, that Petitioner had shown a likelihood of success on the merits because the record was unclear as to whether he had been afforded any post-detention process during his December 11, 2025, hearing. *Id.* at 6-7. As such, the District Judge did not give substantial weight to the private interest at stake or the risk of erroneous deprivation of liberty, despite concluding that the private interest at stake is substantial (*id.* at 5), and that there was nothing in the record to suggest that an Immigration Judge would find Petitioner to be a danger to the community (*id.* at 6).

Now, it is clear from the record that Petitioner did not receive any post-

deprivation process during his December 11, 2025, hearing, as that hearing was solely directed to the merits of his pending applications for asylum, withholding of removal, and protection under the Convention Against Torture. *See generally* ECF 12-1. Thus, the Court finds that the private interest at stake remains high, and the risk of erroneous deprivation of Petitioner's liberty is also high, given the lack of process that was given to Petitioner upon his arrest, compounded by Respondents' failure to give Petitioner a meaningful bond hearing thereafter.[3]

On balance, then, the Court finds that Petitioner suffered a violation of his right to procedural due process when he was initially detained without notice or a pre-deprivation hearing.

**IV**

The next question, then, is whether the March 7, 2026, bond hearing was sufficient to cure this constitutional violation. Petitioner contends it was not, insofar as the Immigration Judge, "relying purely on speculation as to the future outcome of Petitioner's appeal before the Board of Immigration Appeals, determined that Petitioner was a flight risk and denied bond." ECF 9 at 3. Respondents are silent on this issue, and only contend that this Court does not have jurisdiction to review the Immigration Judge's denial of bond. *Id.* at 4.

**A**

The Supreme Court has clarified the boundaries of judicial review in the immigration context by explaining that "[t]he application of a statutory legal standard . . . to an established set of facts is a quintessential mixed question of law and fact" and is reviewable. *Wilkinson v. Garland*, 601 U.S. 209, 212, 144 S. Ct. 780, 218 L. Ed. 2d 140 (2024). Following *Wilkinson*, the Ninth Circuit has held that an Immigration Judge's determination that a detainee poses a danger to the

---

[3] While Petitioner sought a bond hearing in February 2026, that petition was denied for lack of jurisdiction, pursuant to *Matter of Yajure Hurtado*. *See* ECF 1 at ¶ 7.

7

community or a flight risk is a mixed question of law and fact that may be reviewed for an abuse of discretion. *See Martinez v. Clark*, 124 F.4th 775, 783 (9th Cir. 2024) ("*Wilkinson* compels the conclusion that application of the 'dangerousness' standard is a reviewable mixed question."); *see also C.A.R.V. v. Wofford*, No. 1:25-cv-1395-JLT-SKO, 2026 WL 241823, at *3 (E.D. Cal. Jan. 29, 2026) ("In constitutional challenges to an IJ's detention determination, a habeas court generally reviews mixed questions of fact and law under an 'abuse of discretion' standard.").

Thus, while the Court "cannot reweigh evidence," it may nevertheless determine whether the Immigration Judge "applied the correct legal standard" in denying bond. *Martinez*, 124 F.4th at 785 (internal quotation marks omitted). In doing so, the Court may review "whether the IJ's decision reflects clear legal error or is unsupported by sufficient evidence." *C.A.R.V.*, 2026 WL 241823, at *3 (internal quotation marks omitted); *accord Kumar v. Noem*, No. 1:26-cv-1148-DJC-AC, 2026 WL 983129, at *2 (E.D. Cal. Apr. 13, 2026); *Hilario Pankim v. Barr*, No. 20-cv-2941-JSC, 2020 WL 2542022, at *8 (N.D. Cal. May 19, 2020).

**B**

When assessing whether an alien "is a danger to the community or a risk of flight," an immigration judge may consider the following factors:

1) whether the alien has a fixed address in the United States;

2) the alien's length of residence in the United States;

3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future;

4) the alien's employment history;

5) the alien's record of appearance in court;

6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses;

7) the alien's history of immigration violations;

8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and

9) the alien's manner of entry to the United States.

*See Martinez v. Clark*, 124 F.4th at 783 (*quoting In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006)).

An immigration judge has "broad discretion to weigh the listed factors and add any factors not mentioned or discount those that are less probative." *Id.* at 784. But where the habeas court "is left to speculate concerning how the immigration judge viewed the evidence in light of the applicable factors," the court "must conclude that the immigration judge failed to do so, which constitutes an abuse of discretion." *Lopez v. Hernandez*, No. 18-cv-04800-JST, 2026 WL 984151, at *3 (W.D. Wash. Apr. 13, 2026); *see also Nam Ko v. Mullin*, No. 5:26-CV-02020-KS, 2026 WL 1454208, at *6 (C.D. Cal. May 22, 2026) (finding abuse of discretion where "there [wa]s no indication in the record before this Court that the IJ made the flight-risk decision based on the totality of the circumstances or considered any mitigating factors . . . .").

## C

Here, both parties represented to the Court during the hearing on this matter that—for unknown reasons—neither an audio recording nor a transcript of the March 7, 2026, bond hearing is available. Thus, the Court's review is limited to the Order of the Immigration Judge that was issued after the hearing. ECF 11-1.

In that Order, the Immigration Judge concluded that "the denial of [Petitioner's] applications [for asylum and protection under the Convention Against Torture], coupled with [Petitioner's] recent illegal, entry, and the lack of available permanent relief, substantially outweighs the guarantee of the respondent's aunt and uncle, and availability of their fixed address." *Id.*

Thus, while the Order mentions one mitigating factor in the form of the fixed address provided by Petitioner's aunt and uncle, it does not mention any others.

9

Such silence is concerning, given that the record reflects at least the following additional mitigating factors: (1) Petitioner had no criminal history; (2) he maintained lawful employment; (3) he paid taxes; (4) he appeared at each one of his immigration court hearings; and (5) he spent over a year and a half on release on his own recognizance, with no known issues. The failure of the Immigration Judge to make any mention of these mitigating factors leads the Court to conclude that they were not considered at all.

Moreover, the countervailing factors that the Immigration Judge cited were (1) the recency of Petitioner's illegal entry; and (2) the completion of Petitioner's immigration proceedings, the appeal thereof, and the improbability of remand. But it is not clear how either of these factors might contribute to a conclusion that Petitioner posed a risk of flight.

First, the mere fact of Petitioner's "recent, illegal" entry—even though Petitioner entered the United States in May 2023—cannot provide a legitimate consideration upon which to deny a request for release on bond. Given that every individual who appears before an Immigration Judge for a bond hearing lacks lawful status, adopting this reasoning would mean that every bond request for "recent" entrants would be automatically denied, without exception—effectively rendering detention mandatory. *See Argueta-Portillo v. Bondi, et al.*, 1:26-cv-122-MSN-LRV, Dkt. No. 16 (E.D. Va. Mar. 2, 2026) ("an individual's bond hearing fails to comport with due process where an Immigration Judge relies on considerations that would lead to an automatic denial of bond in all cases.").

Second, while an Immigration Judge "may consider the likelihood that relief from removal will be granted in determining whether an alien warrants a bond," *Matter of R-A-V-P-*, 27 I. & N. Dec. at 805, the Immigration Judge here provided no rationale why it should be concluded that under these particular circumstances, Petitioner would try to flee rather than appear in immigration court to pursue his claims for relief from removal proceedings. The mere fact that a noncitizen has

10

unresolved claims for immigration relief "does not mean [the] noncitizen cannot be trusted to appear for future court proceedings on that basis alone." *N.A. v. Warden, Adelanto Det. Facility*, No. 5:25-CV-03007-MBK, 2026 WL 1045196 at *8 (C.D. Cal. Apr. 15, 2026).  Indeed, "all unresolved claims for immigration relief are, by definition, 'speculative.'" *Id.*  Thus, the likelihood of not prevailing on appeal must be considered in juxtaposition to the circumstances that would keep petitioner from fleeing. *See Soriano v. Hernandez*, No. 2:26-cv-00900-DGE, 2026 WL 969764 at *15 (W.D. Wash. April 10, 2026); *see also Cruz-Acevedo v. Scott*, No. 2:26-cv-01654-LK, 2026 WL 1623154 at *19 (W.D. Wash. June 5, 2026) ("the IJ provided no rational connection between Cruz-Acevedo's lack of potential forms of relief from removal and his supposed flight risk").  Here, Petitioner had made a life for himself in the United States, where he was living lawfully, working, paying taxes, and had U.S. citizen relatives.  Even if the merits of his appeal are not "certain," there is no reason to infer that he would not appear for future court proceedings, just as he has while his immigration proceedings have been pending.

Based on the record, then, the Court is compelled to find that the Immigration Judge abused his discretion in finding that Petitioner is a flight risk.

V

With respect to the appropriate remedy, the Court believes it appropriate to order Petitioner's release.

"In habeas cases, federal courts have broad discretion in conditioning a judgment granting relief." *Lujan v. Garcia*, 734 F.3d 917, 933 (9th Cir. 2013). "Federal courts are authorized, under 28 U.S.C. § 2243, to dispose of habeas corpus matters as law and justice require." *Id*. (*quoting Hilton v. Braunskill*, 481 U.S. 770, 775, 107 S. Ct. 2113, 95 L. Ed. 2d 724 (1987)). "Upon determining that an [immigration judge] provided a petitioner with a legally or constitutionally inadequate bond hearing, district courts have either ordered petitioner's immediate release [ ] or ordered that Respondents provide petitioner with a new constitutionally

11

adequate bond hearing." *Perez Velasquez v. Bondi*, No. 26-cv-01759-GPC-DDL, 2026 WL 1042479 at *7 (S.D. Cal. Apr. 16, 2026) (collecting cases).

This Court has already provided Respondents with an opportunity to provide an individualized bond hearing pursuant to 8 U.S.C. § 1226(a). Failing that, the only remedy at this point which can address the harm suffered by Petitioner is immediate release from custody subject to the terms of his prior Order of Release. *See, e.g., Aguirre Solis v. Noem*, No. 2:26-cv-00053-RFB-EJY, 2026 WL 396432 at *7 (D. Nev. Feb. 12, 2026) ("[T]he Court, in its equitable discretion, finds the unique harms suffered by Petitioner because of the government's violation of his due process rights require the remedy of immediate release from custody.").

The Court also finds it necessary to enjoin Respondents from re-detaining Petitioner without first providing Petitioner with individualized notice describing the change in circumstances necessitating his arrest and/or detention, and a pre-deprivation bond hearing before an Immigration Judge at which Respondents will bear the burden of proof. Petitioner shall not be detained unless Respondents demonstrate by clear and convincing evidence at the pre-deprivation hearing that Petitioner is a flight risk or a danger to the community, and that there is no condition or combination of conditions that will reasonably assure Petitioner's appearance and/or the safety of any other person in the community. This additional relief is necessary to provide complete relief from unlawful detention because Petitioner would otherwise be subject to immediate arbitrary re-detention. *See, e.g., Esquivel Pacheco v. Larose*, 2026 WL 242300, at *7 (S.D. Cal. Jan. 29, 2026) ("Consistent with many other courts, the Court enjoins any further detention of Petitioner unless the government first—prior to any detention—justifies the deprivation of his liberty interest at a bond hearing.").

//

12

Accordingly, IT IS HEREBY ORDERED that:

1)    The Petition is GRANTED;

2)    Respondents are directed to RELEASE Petitioner Gurbhej Singh (A# 240-431-570) FORTHWITH and reinstate his Order of Release on his Own Recognizance with the same conditions that were previously in place at the time of his re-detention.

3)    Respondents are DIRECTED to return to Petitioner at the time of his release all confiscated documents and possessions;

4)    Respondents shall file a notice of compliance within 72 hours; and

5)    Respondents are enjoined from re-detaining Petitioner without first providing him with individualized notice describing the change in circumstances necessitating his arrest and/or detention, and a pre-deprivation bond hearing before an Immigration Judge at which Respondents will bear the burden of proof.

DATED:   August 6, 2026

_____
HON. DIANA M. KWOK
UNITED STATES MAGISTRATE JUDGE

13